JAMES S. REECE AND BONNIE B. REECE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Reece
Docket No. 22956-89
United States Tax Court
T.C. Memo 1992-335; 1992 Tax Ct. Memo LEXIS 358; 63 T.C.M. (CCH) 3129; June 11, 1992, Filed *358 Decision will be entered for petitioners. Patricia D. White, for petitioners. Jacqueline M. Hotz, for respondent. Cantrel
CANTREL
MEMORANDUM OPINION CANTREL, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
Respondent determined a deficiency of $ 2,723 in petitioners' Federal income tax for the taxable year 1986. The issue for decision is whether petitioners are entitled to the full amount of a deduction claimed for a contribution to a Keogh plan for 1986. All of the facts have been stipulated. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. Petitioners resided in Ann Arbor, Michigan, at the time they filed their petition. They filed a joint 1986 Federal income tax return with the Internal Revenue *359 Service. Petitioner James S. Reece (hereinafter petitioner) has a doctorate in business administration from Harvard University. In 1970, petitioner began the term of his appointment as a member of the faculty at the School of Business Administration at the University of Michigan (the University). He was a tenured full professor during 1986, and, as such, a salaried employee of the University. During 1986, petitioner's teaching commitment to the University covered 9 months of the year. In addition to his teaching for the University, petitioner designs and leads short seminars on various topics of corporate finance for groups of business executives. This work is done on a contract basis for a number of sponsoring clients. Petitioner also engages in outside consulting activities for fees and receives royalties from textbooks he has written. In connection with the short seminars he designs and leads, petitioner contracts with the Division of Executive Education (DEE) on a per seminar basis. The DEE was founded by the University in 1974. The DEE offers non-credit seminars at the Executive Education Center (EEC) and other programs for business executives throughout the year. *360 The EEC is a building located adjacent to the School of Business Administration. Next to the EEC is a hotel facility for participants known as the Executive Residence. The DEE contracts both with people unrelated to the University and with the University faculty members to design and lead its seminar programs. Petitioner first participated in a DEE program in June 1979. He is not retained on an ongoing basis by DEE. He contracts for each separate seminar he designs and conducts, and he receives a set fee established by the DEE. Petitioner prepares the syllabus and all course materials for any seminars or programs he designs and conducts. He receives no fringe benefits in connection with giving a DEE seminar. The total compensation which petitioner received for his services from the DEE for 1986 was $ 27,788. DEE programs and seminars are held at the EEC which provides meeting rooms, lighting, equipment, clerical, administrative, and janitorial services. Course materials are reproduced at the EEC for the program participants. Course materials provided by the EEC are never sold separately. The cost of materials is included in the registration fee. The registration fee is *361 paid by program participants directly to the EEC. Petitioner also offers and sells his corporate seminar services to other organizations on a regular basis. The breakdown for the number of seminar days taught by petitioner through the DEE at the EEC versus those taught elsewhere for the years 1984-1989 is as follows: Year
EEC
Others
1984
12
15.5
1985
14
26
1986
15.5
20.5
1987
13
27.5
1988
15
21
1989
25
19.5
The Regents of the University place restrictions on the amount of outside remunerative activity in which faculty members may engage. During the academic year, which is from September 1 through May 31, faculty members are limited to 4 days of outside remunerative activity per month. The School of Business Administration regards participation by a faculty member in DEE programs as outside remunerative activity subject to the 4 days per month regental limitation. Payment to those who design and conduct programs for the DEE is made through the University's central accounting system. Payments to instructors who are otherwise not University employees are processed through the purchasing office as services purchased from vendors. Payments to instructors who are *362 otherwise University employees are processed through the payroll department after Form G, Request for Payment of Special Stipends, has been submitted. Form G is used to compensate employees for work performed outside of their regular work assignment as well as to pay honoraria to visiting dignitaries or scholars. The parties have stipulated that a part of petitioner's income, which does not include the wages he received from the University as a tenured professor of $ 64,723.67, is reported on Schedule C for 1986 as follows: Textbook royalties
$  54,858.11
Outside consulting
12,135.00
Form G income
27,789.17
Income from seminars other than DEE
12,750.00
(including Bell Core Tech; General
Electric; Harvard Design Summer
Continuing Education Seminars)
Subtotal
107,532.28
Reimbursed expenses
4,437.45
Total
111,969.73
Petitioner maintains a self-employment retirement plan (Keogh plan) with respect to the income he earns from his work designing and conducting corporate seminars, from his consulting services, and from his textbook royalties. On their 1986 return, petitioners claimed deductible Keogh plan contributions of $ 20,454. Of the total Keogh plan contribution *363 for 1986, $ 5,558 was contributed from amounts received by petitioner from seminars he conducted at the EEC. Respondent contends that petitioners are not entitled to deductible Keogh plan contributions for 1986 with respect to the amounts received by petitioner for the services he provided in conducting seminars at the EEC. In particular, respondent argues that petitioner's services for the DEE were performed as an employee so that no deductible contribution to a Keogh plan may be made from the payments received for such services. [2]
Petitioners claim that they are entitled to deduct the full amount of Keogh plan contributions they made for 1986. Specifically, petitioners assert that petitioner was acting in the capacity *364 of a self-employed independent contractor, rather than an employee, when he conducted seminars at the EEC. We agree with petitioners. Section 404(a)(8) provides that certain contributions by self-employed persons to qualified retirement plans are deductible. The requirements for plan qualification are set out in detail in section 401, with the general rule being that a qualified plan must be established by an employer for the exclusive benefit of his employees. Sec. 401(a). To bring individuals who are self-employed within this framework, section 401(c)(1) provides that a certain "self-employed individual" is treated as an employee. For this purpose, the term "self-employed individual" includes an individual who has "earned income" for the taxable year. Sec. 401(c)(1). "Earned income" is defined, in pertinent part, as "the net earnings from self-employment (as defined in section 1402(a))". Sec. 401(c)(2)(A). Section 1402(a) defines "net earnings from self-employment" as the gross income derived by an individual from any trade or business less the deductions attributable thereto. However, section 1402(c)(2) provides that the performance of services as an employee does not *365 constitute a trade or business for purposes of self-employment income, except for certain situations not relevant herein. See also sec. 1.401-10(b)(3)(i), Income Tax Regs.
The issue of petitioners' entitlement to the deductions at issue hinges upon whether petitioner's relationship with the DEE was in the capacity of a self-employed individual or as an employee. The determination of whether an individual is an employee within the context of section 401(c) rests on the application of common law concepts. Cf. Simpson v. Commissioner, 64 T.C. 974, 984 (1975); Packard v. Commissioner, 63 T.C. 621, 629 (1975). Whether two parties stand in an employer-employee relationship is a question of fact. Air Terminal Cab, Inc. v. United States, 478 F.2d 575, 578 (8th Cir. 1973); Burnetta v. Commissioner, 68 T.C. 387, 397 (1977); sec. 1.1402(c)-1, Income Tax Regs. The burden of proof on this issue rests with petitioners. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The test generally considered fundamental for resolving the question of whether an individual is an employee focuses *366 upon the degree of control exercised by the person for whom the work is performed over the individual who renders the services. Packard v. Commissioner, supra at 629-630; sec. 31.3401(c)-1(b), Employment Tax Regs. However, the degree of control necessary for a finding of employee status varies according to the nature of the services being provided. When the job at issue is one which is performed with a rather independent approach, a lesser degree of control by the party benefiting from the services rendered may still result in a finding of an employer-employee relationship. Pulver v. Commissioner, T.C. Memo. 1982-437. Here, the parties do not dispute that petitioner's employment as a tenured professor calls for an independent approach in teaching class and nonetheless results in an employer-employee relationship. See Bilenas v. Commissioner, T.C. Memo. 1983-661. Respondent would have us extend this relationship to cover petitioner's seminar services for the DEE. We think such an extension is not warranted under the circumstances. The weakness of respondent's position is revealed when petitioner's relationship *367 with the DEE is compared to that of other individuals who are not otherwise employees of the University. Surely an individual who independently contracts with the DEE on a per seminar basis is not an employee of the University. The fact that the DEE provides facilities and support staff to such an individual does not result in the creation of an employer-employee relationship. We conclude that petitioner's relationship with the DEE should not be treated any differently from that of the seminar providers for the DEE who are not University employees. Simply stated, the fact that petitioner is an employee of the University in one capacity does not foreclose the possibility that he may independently contract with the University in another capacity. While a few facts, such as the manner in which petitioner receives his compensation from the DEE, reveal differences in the way petitioner is treated by the DEE from non-university employees, such differences are incidental at most and have proved to be inconsequential in our overall evaluation of this record in its entirety. Petitioners' position receives further support from the fact that the University itself considers petitioner's *368 seminar activity for the DEE to be outside remunerative activity subject to the 4 days per month regental limitation. Both the facts as a whole and the intentions of the University and petitioner, as evidenced by the facts of this record, indicate that petitioner's relationship with the DEE was as a self-employed individual and we so hold. Accordingly, the deductions claimed by petitioners for Keogh plan contributions made during 1986 will be allowed in full. To reflect the foregoing, Decision will be entered for petitioners. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year in issue unless otherwise indicated, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. We observe that respondent has permitted petitioner to treat as section 401↩ self-employment income all of the income he earned from his consulting activities, from textbook royalties, and from designing and conducting seminars for groups of executives convened by sponsors other than the DEE.